STURGIS *v.* SPRENGER.

MECHANICS' LIENS—QUESTIONS OF FACT—EQUITY.

On a bill for the enforcement of a mechanic's lien, where the evidence was very contradictory, and the pivotal questions were ones of fact, the court below having had the great advantage of hearing and seeing the witnesses, the decree will be affirmed.

Appeal from Wayne; Withey, J., presiding. Submitted June 6, 1918. (Docket No. 59.) Decided July 18, 1918.

Bill by William J. Sturgis and David E. Sturgis, doing business as D. E. Sturgis & Son, against George Sprenger and another to enforce a mechanic's lien. From a decree for plaintiffs, defendants appeal. Affirmed.

*Monaghan, Monaghan, O'Brien & Crowley,* for plaintiffs.

*Frank J. Riggs* and *J. W. Bennett,* for defendants.

MOORE, J. This is a proceeding to establish a lien for work done by the plaintiffs under a written contract to convert a cottage into a two-family flat, the contract price for which work was to be $300 when the roof was raised and boarded, $600 when the plumbing was roughed in and plastering done, and $610 when the job was completed. The bill of complaint asks for a decree for $628.36 interest and costs. The defendants claim the plaintiffs did not complete the contract and that it required an expenditure of more than $1,800 to complete what the plaintiffs had agreed but failed to do. The case was tried in open court, the judge rendered a decree in favor of the plaintiffs

in the sum of $438.32 and interest. The case is brought here by appeal, defendants claiming a decree should have been rendered in their favor in the sum of $1,216.38.

The testimony was as conflicting as could be as is illustrated by the following quotations from the testimony. The plaintiff William J. Sturgis testified:

"The chimneys were run down into the ground and were built of brick.

"Q. How far did they go into the ground?

"A. About three feet six inches.

"Q. Did you see that done?

"A. Yes, sir. * * * The chimneys we built went down in the ground about three feet. There wasn't any timbers in the chimney."

Fred Benner, a witness for defendants who did the work on the building after plaintiffs claimed it was completed, testified:

"Part of the chimneys resting on the floors and the chimneys didn't have any foundations to them, and the chimneys were 2x8 flues, were too heavy, and all the strength was right on the floor, that is, all the weight. I found upon examination a stringer built right into the chimney. The stringer is that part of the building where the joists rest and was on the first floor. It was built right into the chimney and the foundation around it. I noticed the house was settling in the back where the chimney was coming down. * * *

"I had to tear down both chimneys. There was no foundation under the chimneys. They were resting on the ground about six inches under the surface. There was a lot of water under the chimneys. They had to come down."

There are some significant things disclosed by the record. The defendant George Sprenger lived near the building and passed it every morning going to his work. He made the first two payments as the contract required. There is nothing in his testimony to

indicate that he made any complaint until he was asked to make the final payment. The following appears in his cross-examination:

"*Q.* The partitions in the rooms as they were when Mr. Benner started his work were laid out in accordance with these plans and specifications, were they not?

"*A.* Yes, those plans.

"*Q.* They were laid out in accordance with these plans and specifications?

"*A.* That is what Mr. Sturgis brought over to my place.

"*Q.* The work has been done according to them?

"*A.* I think so.

"*Q.* When he quit the job?

"*A.* I think so.

"*Q.* And you had accepted these plans and examined them before he went on the contract?

"*A.* I never examined them at all because I don't know the first thing about plans.

"*Q.* Did you have them in your possession?

"*A.* I had them.

"*Q.* Do you mean to say you were spending this money, some two thousand dollars on the job and didn't even look at them?

"*A.* I looked at them but I don't know whether they were good or not. I left it entirely with Mr. Sturgis.

"*Q.* Well, they were to your satisfaction when you signed the contract?

"*A.* When I signed the contract I thought they were all right.  *  *  *

"*Q.* And when Mr. Sturgis was through with the work you said you wanted a sworn statement.

"*A.* Because he told me he didn't pay that much and I wanted a sworn statement.

"*Q.* You wanted a sworn statement when the work was done?

"*A.* Yes.

"*Q.* And when you asked for that sworn statement and received this you were satisfied with it, the one you got?  *  *  *

"*A.* He told me he had everything paid but the plumber and I wanted him to pay the plumber first.

"*Q.* That is the only discussion you had with Mr. Sturgis that time, that you wanted the plumber paid?

"*A.* Yes, sir.

"*Q.* And Mr. Sturgis at your request, through the instructions of your attorney, brought the original of this paper with the waiver of the lien of the plumber?

"*A.* Yes, sir.

"*Q.* That satisfied you and satisfied your attorney?

"*A.* Yes.

"*Q.* You refer to Mr. Riggs?

"*A.* Yes.

"*Q.* And you were satisfied?

"*A.* Yes, I wanted the plumber paid.

"*Q.* Well, you didn't tell Mr. Sturgis this was for the completed job wasn't it?

"*A.* I suppose so.

"*Q.* Well now you know, you are an intelligent man. This was for a completed job and when you got this paper you were satisfied?

"*A.* Not with the job I wasn't satisfied.

"*Q.* Well, what did you point out to Mr. Sturgis at the time when he gave you this paper in your attorney's office?

"*A.* I told him the interior finish and the outside painting and all that wasn't in good shape.

"*Q.* You complained of the painting?

"*A.* Lots of other things, I don't remember now, and he said he wouldn't have anything to do with the building any more.

"*Q.* Well, you complained that the painting wasn't done according to specifications?

"*A.* Yes, sir.

"*Q.* And that is all your contention?

"*A.* Oh, sure.

"*Q.* And the interior finish wasn't right? That is all that you complained of?

"*A.* I can't remember this any more."

It is the claim of the plaintiffs that the job was substantially completed and that defendants agreed to pay them if they would bring a waiver of his lien from the plumber, and that they did so. It is useless to attempt to reconcile the testimony. It is too conflict-

ing for that. It is impossible to read the record, however, without reaching the conclusion that defendants instead of attempting to, in good faith, complete the contract made by the plaintiffs entered upon an entirely different construction for which plaintiffs should not be held liable. The trial judge made an allowance of nearly $200 for defects in the construction. He had the great advantage of hearing and seeing the witnesses.

The pivotal questions are those of fact. We are not persuaded the decree is wrong.

It is affirmed with costs.

OSTRANDER, C. J., and BIRD, STEERE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.